PITTSBURGH, CINCINNATI, CHICAGO AND ST. LOUIS RAILROAD COMPANY *v.* COOK.

[No. 11,828. Filed June 26, 1924.]

1. RAILROADS.—*Crossing Accident.—Complaint.—Sufficiency.*—A complaint alleging that at the time of a crossing accident, the plaintiff was riding as a passive guest in an automobile driven by her husband, that the defendant's watchman at the crossing signaled plaintiff's husband to drive on and over the crossing, which he proceeded to do, was sufficient, without an allegation that the plaintiff or her husband saw the signal of the watchman or acted upon it. p. 597.

2. RAILROADS.— *Crossing Accident.— Complaint.— Sufficiency.— Contributory Negligence.*—A complaint alleging that, at the time of a crossing accident, the plaintiff was riding as a passive guest in an automobile driven by her husband, that the view of defendant's track was obstructed so that neither the plaintiff nor her husband could see an approaching train, that the defendant's watchman at said crossing signaled that the way was clear for the passage of vehicles over said crossing and that her husband proceeded to drive on and over said crossing, does not show plaintiff guilty of contributory negligence so as to render it subject to demurrer. p. 597.

3. PLEADING.—*Amendments.*—*During Trial.*—*To Conform to Proof.*—*Statute.*—Under the provisions of §§400, 401 Burns 1914, §§391, 392 R. S. 1881, in the trial of an action against a railroad company for injuries in a crossing accident, where the complaint alleged that the plaintiff and her husband stopped their automobile near the defendant's track while one of its trains, designated by a certain number, went by, the court did not err in permitting an amendment of the complaint to conform to the proof that it was another train, the averment as to the number of the train not being material.  p. 598.

4. TRIAL.—*Instructions.*—*Refusing to Give.*—*Not Applicable to Issues.*—An instruction which is not applicable to the issues is properly refused, as the giving of the same could only tend to confuse the jury.  p. 599.

5. RAILROADS.—*Crossing Accident.*—*Verdict for Plaintiff.*—*Sufficiency of Evidence.*—In an action by passenger in an automobile injured in a crossing accident, evidence that a watchman at the crossing signaled the driver of the automobile to cross, *held* sufficient to sustain a verdict for plaintiff. p. 599.

6. RAILROADS.—*Crossing Accident.*—*Automobile Driver May Rely on Signal of Flagman.*—The driver of an automobile approaching a railroad crossing at which a watchman or flagman is stationed, when signaled by such flagman to cross, may rely on said signal in the absence of any circumstances that would cause a reasonably prudent person to investigate the safety of following his direction.  p. 600.

From Wayne Circuit Court; *William A. Bond,* Judge.

Action by Eva M. Cook against the Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*John L. Rupe,* for appellant.

*Gardner, Jessup & Hoelscher,* for appellee.

ENLOE, C. J.—This was an action for damages on account of personal injuries sustained as a result of a collision between an automobile, then and there being driven by the husband of appellee, and with whom she was riding, as she alleges, as a passive guest, and one of appellant's trains.  The cause was tried upon one paragraph of complaint, (the fifth) to which the ap-

pellant had unsuccessfully demurred.    There was an answer in general denial, a trial by a jury, and a verdict for the appellee.    The appellant's motion for a new trial having been overruled, it now prosecutes this appeal and has assigned as error said adverse rulings.·

We shall first notice the ruling on said demurrer. There was no motion to make said complaint more specific.    In the memorandum filed with said demurrer, there were five specifications, but the valid ones present only the question of contributory negligence as a matter of law.

It appears from the averments of the complaint that the appellant has a double-track railroad through the town of Centerville, Wayne County, Indiana; that Main Cross Street, in said town of Centerville, runs north and south, and is crossed by the tracks of appellant at right angles; that a short distance to the east of said crossing, the tracks of appellant curve to the north; that to a person approaching said crossing from the north, the view of a train approaching said crossing from the east was obstructed so that, from a point about twenty-eight feet north of said crossing a train approaching from the east, on the north track, could not be seen by a person seated in an automobile, at a distance of more than 275 feet, and, at a distance of fourteen feet from said track, a train approaching from the east could not be seen by a person similarly situated, at a distance of more than 600 feet; that for some distance to the east of said crossing, the tracks of said appellant are "on a down grade" towards the west; that on July 4, 1920, at about the hour of 9 a. m., the appellee, in company with her husband, with whom she was riding as a passive guest, approached said crossing from the north, the husband driving said car; that the appellant employed and kept a watchman at said crossing in the day-time to warn persons about to use said crossing

of the approach of trains; that near to said tracks, and on the east side of said Main Street, was a small house, a "watchman's shanty," used as such by appellant's said watchman; that on said day and at said time, as the appellee and her said husband approached said crossing, the said watchman of appellant was standing in the center of said street and north of said railroad tracks; that the husband of appellee brought his automobile to a stop at a point about sixty feet north of said railroad track and there remained until after a train of appellant, east bound, had passed over said crossing; that immediately after said east bound train had passed over said crossing, "the said watchman negligently, carelessly, and without paying due heed and attention to his duty and business at said crossing, did then and there, by waving or swinging of his right arm to the north and south, signal and beckon and invite plaintiff's husband, and also said automobile south of said tracks, to drive on and over said crossing, and did then himself walk south over said tracks in a direction towards said shanty, and meaning thereby that there was no train approaching said crossing and that it was safe to drive over said tracks and crossing; that immediately after the giving of said signs and invitation to cross said tracks and crossing, the said automobile south of said tracks did start and proceed north upon and across said tracks, * * *, and when about fifteen feet north of said tracks, passed the automobile of plaintiff's husband, which he was then driving south on the west side of said Main Cross Street, towards said crossing, and thereby further obstructed the view of plaintiff's husband and of this plaintiff to the east in the direction of said north track and prevented plaintiff's husband and this plaintiff from seeing said approaching train No. 21, and thereby added to the noise and confusion at said crossing.

"That immediately after said watchman gave such signal and invitation to cross said tracks as aforesaid, the plaintiff's husband started his automobile and ran the same slowly and carefully south towards said tracks and crossing, the plaintiff and plaintiff's husband at all times carefully looking and listening for approaching trains, but neither the plaintiff nor her husband saw or heard any train approaching said crossing, and had not at any time previous heard the ringing of any bell or the blowing of any whistle on any train then approaching said crossing, * * *; that when the automobile in which plaintiff was riding was almost upon the north track, the said watchman suddenly called to plaintiff's husband to stop, and plaintiff then for the first time saw a passenger train, coming from the east, approaching said crossing and running at a speed of sixty miles per hour; that plaintiff at once attempted to step out of said automobile and avoid being struck and injured, but it was too late by the exercise of any degree of care, skill, and diligence then so to do; that the plaintiff's husband then and there and immediately attempted to stop his automobile suddenly, in order to avoid a collision with said approaching train, but it was then too late by the exercise of ordinary care and diligence so to do, and said automobile moved to and upon said north track directly in front of said approaching train, and said train then and there struck said automobile and hurled the plaintiff therefrom with great force and violence, thereby injuring her."

The appellant first insists that the complaint is insufficient because "there is no allegation that the plaintiff or the driver saw the signal of the watchman or acted upon it." It will be noted that the complaint alleged that said watchman did "signal and beckon and invite plaintiff's husband" to drive on and over said crossing, and the manner in which such signal

was given is also alleged. This, in the complaint, was certainly sufficient; it made said complaint good as against a demurrer for want of facts. The signal so given was for the driver of the automobile, the husband of appellee. Whether said driver saw said signal and was acting upon it when he started to cross these tracks was a question for the jury, and if the appellee was then and there "riding in said automobile as the guest of her husband, and was not operating or controlling said automobile in any way", as she alleged in her complaint, the lack of the averment complained of would not render her complaint bad, in view of the other averments thereof. Nor can it be said, as a matter of law, that the averments of the said complaint show appellee to have been guilty of contributory negligence. The demurrer was rightly overruled.

The appellant next complains of the action of the trial court in permitting the complaint to be amended during the course of the trial. The negligence charged, and upon which appellee relied for a recovery, was that of the crossing watchman. In her complaint, the appellee had alleged that the east-bound train on the morning in question, and to let which train pass her husband had stopped his automobile at a point sixty feet north of said track, was train No. 802, but, on the trial, the evidence disclosed that the train in question was "First No. 6", a fast train from the west. The appellee then asked permission to amend her complaint to conform to this proof. Permission was granted, and of this action of the court, the appellant now complains. The amendment sought to be made did not in any way change the issues; indeed it was not material that the train number of said east-bound train should be alleged; the negligence charged did not have any connection with the operation of said train; the important facts were

that appellee and her husband stopped to let a train, east-bound, pass, and that after it had cleared the crossing in question, the watchman signaled that the crossing was clear. The appellee's right to a verdict in this case did not depend upon the number of the train in question. The court did not err in permitting said amendment; the same was fully authorized by our statute, §§400, 401 Burns 1914, §§391, 392 R. S. 1881.

Complaint is next made of the refusal of the court to give instruction No. 8 requested by appellant. This instruction was not applicable to the issues in this case and the giving of the same could only tend to confuse the jury; it was rightly refused.

Finally, the appellant contends that the evidence is insufficient to sustain the verdict, and that therefore the court erred in refusing to give its tendered instruction No. 1, which was a peremptory instruction to return a verdict for the appellant. In support of its contention in this behalf, appellant says, (a) "There is no word of evidence that the plaintiff or her husband saw any signal by the flagman or acted upon any such signal"; (b) "the evidence affirmatively, without contradiction, shows they did nothing to ascertain whether they might safely go on the crossing."

As to the first of the above mentioned contentions, we find in the record the testimony of one Weiser, who testified, as his testimony is set forth in appellant's brief, that he saw the accident; "that right after the train passed east, flagman motioned Mr. Cook to come on. He was standing in between the two tracks on the crossing." Ralph Koehring, who was in the automobile which had stopped south of the tracks to let the east-bound train pass, testified: "After the east-bound train had completely crossed the crossing, we were signaled to proceed north." Katherine Daub, who also was in said machine, testified: "Before our

machine started to go over the crossing, I observed a watchman there who motioned us to cross." Carl Grottendick, who was the driver of the machine in which Koehring and Miss Daub were riding testified: "At a signal from the watchman we crossed." William Blue, a witness who saw the accident testified: "After the train passed east the watchman walked to the middle of the track and motioned for them to come on. * * *. How they happened to come on, Mr. Stinson waved for them to come on. Motioned with a paddle to come on. He had a round disk with the word 'stop' on it, and he waved it. Then Cook started and ran right down on the track." Here, certainly was evidence from which the jury might find that the plaintiff and her deceased husband, in attempting to cross said tracks, were acting upon an invitation to cross said tracks given by the flagman, or crossing watchman of appellant—an invitation which was, in effect, a representation to them that said crossing was safe so far as any on-coming trains were concerned—a representation which was false and which we may well believe lured the husband to his death, and the appellee into a trap from which her escape alive seems almost providential.

As to the second contention of appellant, that the record shows that the appellee and her husband did nothing in the way of *active* care for their own 6. safety, it is sufficient to say that if they were invited into said peril by said watchman and, at the time said invitation was given, there was nothing to cause a reasonably prudent person to hesitate and investigate the matter of the safety of said crossing, then the parties in question had a right to rely upon the said representation of said flagman in attempting to cross said tracks.

We find no error in this record.

Judgment affirmed.